IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MARTHA RITTER | : | |
| | : | |
| v. | : | Civil Action No. DKC 14-2126 |
| | : | |
| IBM CORPORATE PENSION PLAN ADMINISTRATOR | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant IBM Corporate Pension Plan Administrator ("Administrator" or "Defendant").[1]   (ECF No. 11).   The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.   Local Rule 105.6.   For the following reasons, Defendant's motion will be granted.

**I.   Background**

Unless otherwise noted, the facts outlined here are undisputed and are construed in the light most favorable to Plaintiff Martha Ritter ("Plaintiff").   Plaintiff worked for IBM as a systems engineer from July 1966 through August 1975.   (ECF

---

[1] Defendant notes that the official name of the plan in question is the "IBM Retirement Plan."   (ECF No. 11, at 1 n.1).

Nos. 11-1, at 2; 23, at 3).   Plaintiff returned to work at IBM for approximately three months in 1994.   Prior to 1989, IBM offered a retirement plan (the "Plan") that only provided fully vested retirement benefits to employees who worked at IBM for ten years or more.   When Plaintiff left IBM in 1975, her retirement benefits had not vested because she had been employed there for just over nine years.   In 1989, the Plan was amended to provide vested retirement benefits after five years of service.   (ECF No. 11-2, at 80).   The Plan credited past service of an employee who, like Plaintiff, incurred a substantial break in service at IBM if she either "complete[d] 1 year of continuous service subsequent to the Break in Continuous Service, or [] reach[ed] age 65 while a Regular Employee of the Company."[2]   (*Id.* at 58).

Plaintiff alleges that, "[a]s a condition of [her] agreeing to reemployment with IBM, . . . IBM agreed to vest [her] in their Employee Retirement Plan *immediately* upon [her] return to employment on February 1, 1994."   (ECF No. 23-2, at 2 (emphasis in original)).   According to Plaintiff, "IBM accomplished this by changing [her] 'service computation date.'"   (*Id.*).   She contends that, in order to trigger vesting artificially, IBM

---

[2] This provision applies if an employee "incurs a Break in Continuous Service . . . of more than 5 years or more than prior Continuous Service whichever is greater."   (ECF No. 11-2, at 58).   Plaintiff's 18 year break in service triggers this provision, as she was previously employed for only nine years.

changed her records to indicate that she had been working continuously at IBM for nine years since January 1985, rather than for a nine year period from 1966 to 1975. She claims that before she accepted a buyout in 1994, she was assured that her benefits were vested. Later, once Plaintiff left IBM after three months employment in 1994, she requested information regarding her expected retirement income. In response, she received a "vested rights estimate" that indicated she would receive $1,952.16 annually upon retirement. (ECF No. 23-3, at 2). Plaintiff contends this estimate utilized the aforementioned revised employment records per her agreement. The document included a disclaimer explaining:

> These calculations are based on information provided from your personnel and payroll records and may be subject to errors in the accumulation of data. . . . These ESTIMATES are prepared for retirement PLANNING purposes only. Your actual IBM retirement calculations will be given to you when you retire. . . . The company reserves the right to amend the Plan at any time for any purpose.

(*Id.*).

Plaintiff turned 65 on December 30, 2009. In January 2010, she wrote to IBM requesting payment of her retirement benefits. In February 2010, IBM sent Plaintiff a check for $554.70 and a letter explaining that this was a one-time lump payment because her retirement benefits were not fully vested. (ECF No. 11-2,

at 20-23).   On approximately March 31, Plaintiff wrote IBM arguing that her retirement benefits had vested.   (*Id.* at 19). In response, the Administrator sent a letter dated April 27 informing Plaintiff that he was "unable to grant [her] request for a pension" and that she could appeal the denial "within 60 days after receiving" the notice.   (*Id.* at 14, 16).   According to Plaintiff, she did not receive the notice until February 10, 2011 due to problems she was experiencing receiving her mail. (ECF No. 23-2, at 4).   On April 1, 2011, Plaintiff sent an appeal (ECF No. 11-2, at 10), which the Administrator denied on June 30 (*id.* at 32-34).   In its denial letter, the Administrator stated that the estimate of benefits Plaintiff received in 1994 was incorrect.   The letter also informed Plaintiff that she "may have a right to file suit in state or federal court [under ERISA] since [her] appeal has been denied."   (*Id.* at 34).

Plaintiff, proceeding *pro se* at the time, commenced this suit on June 30, 2014.   (ECF No. 1).   Although Plaintiff avers that "the complaint is brought under [ERISA §] 502(a)(3)," her request to recover benefits under the Plan is properly brought under § 502(a)(1)(B).[3]   On January 31, 2015, Defendant filed the pending motion to dismiss or, in the alternative, for summary judgment.   (ECF No. 11).   Defendant also filed the

---

[3] Defendant does not oppose construing the complaint as being properly brought under § 502(a)(1)(B), and the court will do so given Plaintiff's *pro se* status at the time of filing.

administrative record used to assess Plaintiff's request and appeal for benefits. (ECF No. 14). After receiving extensions of time, Plaintiff, represented by counsel, responded in opposition on October 30 (ECF No. 23), and Defendant replied (ECF No. 29).

## II. Standard of Review

Defendant has moved to dismiss or, in the alternative, for summary judgment. Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion to dismiss. *See Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). It is appropriate to consider the extraneous materials submitted by Defendant, and Plaintiff had notice by virtue of the motion filed by Defendant. *See Warner v. Quilo,*

No. ELH-12-248, 2012 WL 3065358, at *2 (D.Md. July 26, 2012) ("When the movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur[.]" (quoting *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998))). Accordingly, Defendant's motion will be treated as one for summary judgment.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court of the United States explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005).   The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *See Liberty Lobby,* 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

### A.   Statute of Limitations

Defendant argues that Plaintiff's suit, filed on June 30, 2014, is time-barred because it was filed more than three years after Plaintiff "was on notice that her benefits were less than she expected" in February 2010.   (*See* ECF No. 11-1, at 9).

Plaintiff counters that her claim did not accrue until "Defendant issued its final denial" on June 30, 2011. (ECF No. 23, at 9).

Because ERISA does not include a statute of limitations for private causes of action to recover benefits, courts look to the law of the forum state for an analogous statute of limitations. *See White v. Sun Life Ins. Co. of Canada*, 488 F.3d 240, 245 (4th Cir. 2007), *abrogated on other grounds by Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S.Ct. 604 (2013); *Bond v. Marriott Intern., Inc.*, 971 F.Supp.2d 480, 488 (D.Md. 2013). The parties agree that Maryland's three-year statute of limitations for breach of contract actions applies here. "The statute of limitations 'clock generally begins to run at the time the plaintiff can first file suit.'" *England v. Marriott Intern., Inc.*, 764 F.Supp.2d 761, 770 (D.Md. 2011) (quoting *White*, 488 F.3d at 245). "This means that the statute of limitations begins to run at the moment when the plaintiff may seek judicial review, because ERISA plaintiffs must generally exhaust administrative remedies before seeking judicial relief." *White*, 488 F.3d at 246 (citing *Makar v. Health Care Corp. of the Mid-Atlantic (Carefirst)*, 872 F.2d 80, 81 (4th Cir. 1989)). Thus, under the "general rule" in the United States Court of Appeals for the Fourth Circuit, Plaintiff timely filed her action within

three years after the Administrator issued his final administrative denial of her claim on June 30, 2011.

Nevertheless, Defendant argues that the court should use an "alternative approach" to determine when Plaintiff's claim accrued before the final denial of her claim because she was on notice that her benefits were less than she expected in February 2010.  Although the Fourth Circuit recognizes such an approach, the cases Defendant cites illustrate how it is an exception to the general rule and not applicable here.  For example, in *Cotter v. Eastern Conference of Teamsters Retirement Plan*, 898 F.2d 424, 429 (4th Cir. 1990), the Fourth Circuit, after recognizing that the "mandate" to apply the general rule within the Fourth Circuit "is clear," noted that "its application to the facts of the case before [it was] tricky because specification of the date at which [the plaintiff's] claim for benefits 'was denied' is somewhat elusive."  To avoid difficulties in determining when the claim was denied, the Fourth Circuit applied the alternative approach of running the statute of limitations from when the plaintiff should have been alerted to a denial of a claim.  *Id.*  Similarly, in *Cecil v. AAA Mid-Atlantic, Inc.*, 118 F.Supp.2d 659, 666-67 (D.Md. 2000), Judge Blake applied the alternative approach because the plaintiff never filed a formal request for benefits other than the lawsuit.  *See also Wallace v. Freight Drivers and Helpers*

*Local No. 557 Pension Fund*, No. 11-2062-JKB, 2012 WL 2571223, at
*7 (D.Md. July 2, 2012) (holding that the plaintiff did not have
"knowledge of a clear repudiation of rights under the plan"
because the plaintiff's "claim for additional benefits was still
subject to further administrative review"); *Herman v. Lincoln
Nat. Life Ins. Co.*, No. 11-cv-03378-AW, 2012 WL 1999879, at *3
(D.Md. June 4, 2012) ("Where, as here, the [p]laintiff has never
made a claim for benefits and been denied, the Fourth Circuit
applies an alternative approach."). Here, Plaintiff made a
separate claim for benefits and there is no such difficulty in
determining that the Administrator issued his final
administrative denial on June 30, 2011. (ECF No. 11-2, at 32-
34). Accordingly, the Fourth Circuit's "general rule" applies,
and Plaintiff timely filed her claim within the three-year
statute of limitations period.

   **B.   Denial of Plaintiff's Benefits**

   In reviewing a plan administrator's decision to deny
benefits, a court must first determine whether the plan gives
the administrator discretionary authority to determine
eligibility for benefits. *Booth v. Wal-Mart Stores, Inc.*, 201
F.3d 335, 340-41 (4th Cir. 2000). If the plan does not give
discretionary authority, the court reviews the employee's claim
*de novo* as it would any other contract claim – by looking to the
terms of the plan and other manifestations of the parties'

intent.  *Id.* at 341.   If, on the other hand, the plan by its terms confers discretion on the administrator, the court reviews the administrator's decision for abuse of discretion.  *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 355 (4th Cir. 2008); *Booth*, 201 F.3d at 341.   Here, the Plan gives the Administrator "the full power, authority and discretion" to administer the Plan, "including the review of claims" such as Plaintiff's. (ECF No. 11-2, at 52).   Plaintiff does not dispute that the Plan gives the Administrator discretionary power.   Accordingly, the Administrator's decision will be reviewed for abuse of discretion.

Under the abuse of discretion standard, an administrator's decision will not be disturbed if it is reasonable.  *Booth*, 201 F.3d at 342.  "The administrator's decision is reasonable 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'"  *DuPerry v. Life Ins. Co. of N. America*, 632 F.3d 860, 869 (4th Cir. 2011) (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)).  "[T]he abuse-of-discretion standard requires that a court 'not reverse merely because it would have come to a different result in the first instance.'"  *Boyd v. Bell*, 796 F.Supp.2d 682, 689 (D.Md. 2011) (quoting *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008)).  A "court is not permitted to re-weigh the evidence itself."

*Evans*, 514 F.3d at 325.   The Fourth Circuit has set forth a nonexclusive list of factors that a court may consider when determining whether a plan administrator's decision is reasonable:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of the discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-43.

Defendant argues that the decision to deny Plaintiff's benefits is reasonable because it "is based on an explicit provision of the Plan.   The April 2010 denial letter quotes Article 10(A) of the Plan, regarding the manner in which creditable years of service are calculated when there has been a break in service of more than 5 years."   (ECF No. 11-1, at 11).   Plaintiff does not contend that the Administrator's decision was an unreasonable application of the Plan to her *actual* employment history.   Rather, Plaintiff asserts that the denial was unreasonable because it is contrary to the assurances and

estimates she received in 1994; Plaintiff avers that she was promised that her benefits would vest immediately upon returning to work for IBM in 1994. (ECF No. 23, at 11-12). Plaintiff has, however, sued the Plan Administrator under ERISA, and not her employer for a breach of contract. *See Grover v. Comdial Corp.*, No. 3:01cv00035, 2002 WL 1066951, at *4 (W.D.Va. May 23, 2002) (allowing the plaintiff to bring a breach of contract claim *against an employer*, rather than an ERISA claim against a plan administrator, because "the relief, while it is measured in part by the benefits the plaintiff would have received, depends not on a resolution of any question involving ERISA interpretation; rather, it depends on a resolution of whether an employment contract has been breached"). Plaintiff also argues that a conflict of interest exists because the Administrator administers the Plan and is employed by IBM. As a result, according to Plaintiff, the Administrator did not give her claim for benefits a "full and fair review." (*Id.* at 13).

A review of the record shows that the Administrator's denial of Plaintiff's benefits was reasonable. The Administrator applied the Plan's unambiguous and explicit language to Plaintiff's employment history, determining that she was not entitled to full retirement benefits based on her years of service. As discussed above, Plaintiff does not dispute that this is the correct application of the Plan's language to her

actual employment history.   The information Plaintiff received
in 1994, which was merely an estimate and included a disclaimer
about potential errors, does not alter the explicit language of
the Plan.   *Cf. Pierce v. Sec. Trust Life Ins. Co.*, 979 F.2d 23,
29 (4th Cir. 1992) (noting that "all benefits plans under ERISA
[must] be established and maintained pursuant to a written
instrument" such that oral modifications are not allowed).
There is no indication that an administrator of the Plan has
ever applied its vesting provisions differently or otherwise
changed the interpretation of the vesting requirements.
Therefore, the language of the Plan supports the reasonableness
of the Administrator's decision.

    In addition, the Administrator's decisionmaking process was
reasoned, principled, and provided Plaintiff with significant
procedural protections and an opportunity to be heard.
Plaintiff first learned that she would not be receiving her
expected benefits in February 2010.   (ECF No. 11-2, at 20-30).
She then requested another determination, which the
Administrator provided in writing and with an opportunity to
appeal.   (*Id.* at 14-15).   Plaintiff appealed the decision, and
the Administrator considered her appeal without challenging its
timeliness even though it was sent approximately one year after
the initial denial.   In deciding the appeal, the Administrator
"review[ed] the information [Plaintiff] provided, [his] records,

14

and the Plan's rules." (*Id.* at 32-34).  Plaintiff argued that IBM agreed to alter her effective service dates, and she provided a copy of the estimate she received in 1994.  (ECF No. 11-2, at 11-13).  Plaintiff did not provide any additional evidence regarding the alleged agreement.  In fact, her offer letter from IBM in 1994 makes no mention of any change to the vesting of her benefits.  The Administrator considered Plaintiff's evidence in his decisionmaking process, and he determined that the 1994 estimate was erroneous because it incorrectly assumed that Plaintiff worked for a full year in 1994.  (ECF No. 11-2, at 32-34).  He ultimately decided that Plaintiff's limited evidence of vesting was not enough to overcome the explicit language of the Plan and her undisputed employment history.

Moreover, despite Plaintiff's conclusory assertions of a conflict of interest, there is "no evidence raising a concern" that a potential conflict improperly influenced the decision. *See Champion*, 550 F.3d at 362 (reviewing evidence of a conflict of interest as a factor in determining the reasonableness of a plan administrator's termination of benefits).  The Administrator gave Plaintiff multiple opportunities to be heard and provided balanced, well-reasoned written determinations. Plaintiff "provides no contrary evidence tending to show" that Defendant's potential conflict "affected the benefits decision."

15

*Id.* (citation and internal quotation marks omitted).   The Fourth Circuit has held that a conflict of interest may be a "tiebreaker when the other factors are closely balanced." *Id.* (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008)).   Here, "the factors are not closely balanced" because Defendant gave Plaintiff a full and fair opportunity to be heard and "provided a well-reasoned justification for its decision denying further benefits, based on the record and the Plan language." *Id.*   Accordingly, the Administrator did not abuse his discretion in denying Plaintiff's benefits under the Plan.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss or, in the alternative, for summary judgment filed by Defendant will be granted.   A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
